So, similarly, each side has 20 minutes, but we have cross appeals here, so we'll sort of proceed similarly as we did in the last case. And I'm assuming for, are you Ms. St. Clair? All right. So, do you have any questions? Do you understand how we're sort of proceeding? Okay. Thank you. All right. And we're just having one person each side arguing. So, you look very familiar. Mr. Egan, are you back?  Yes, Your Honor. John Egan for the plaintiffs. In Ferguson v. Smith this time, may it please the Court, I'd like to reserve five minutes for rebuttal. I'll start with plaintiff's assignment of error, and that's that Oregon penalty wages cannot be assessed under the language of the statute unless there's a due date. And there's been kind of a moving goalpost in this case as to what exactly defendants are opposing. At first they said there's not a due date, that violations of 120 can't create a violation of overtime or minimum wage. Now I think towards the end of the case, the trial court said, well, we just don't think this was a violation of 652.120, because we think that it builds in a grace period. Well, so you agree that 652.120 provides a grace period for employees to remedy violations of late payment. Do you agree with that? No. I don't think it provides a grace period at all. The first subsection one of that statute says you have to pay all wages due and owing on payday. The next subsection says your paydays have to be 35 days apart or less, and that employers can make them more. Is there anything in the language of the statute about a grace period? No. No. There was a section added in 2007, and if you look at the legislative history, which we presented, Boley was having a problem with when an employer was told by an employee, hey, you underpaid me, and they said, you are correct, I did underpay you. And then it would be once. So this section that you're talking about that was added is, which is that section? Section five. Okay, section five.  That's 652.120, section five. Yeah. Right. Yeah. I'm confused. Are we talking about Ferguson v. Smith, or are we back on the other case? There's some overlap. Okay. In Ferguson v. Smith, we're talking about when penalty wages start accruing. Yeah. Yeah. And so it involves some of the same statutes. And because the penalty wage statute says the penalty wages run from the due date, there has to be one due date. Now, if someone's suing for regular wages, there may or may not be a grace period, right? There's lots of statutes in the regular wage chapter, 652, that say, you know, you can't get attorney fees unless 48 hours have gone by, that you have to give a certain amount of notice before penalties can apply. Those things for regular wages. If someone owes you $10 and they pay you $10 before you sue, you don't have a cause of for unpaid wages. So Oregon Supreme Court has not said that bringing charges, failure to pay the minimum wage as it relates to 652.125. They haven't actually addressed that, right? No. All right. But let's just say, all right, when we certify, we don't have to certify everything that there's not an exact answer. We're allowed to surmise what we think the answer is. So I'm struggling with the fact that even though you tell me there isn't a grace period, if I think that there is, if that is the case, how could an employer fail to pay the minimum wage under 653.055 if the grace period in 652.120 subsection 5 has not yet lapsed? I'm having trouble philosophically with that. Sure. If there is a grace period, it applies to unpaid wages, as I was starting to talk about. You can't bring a claim for unpaid wages if you've been paid all of your wages, regardless of if it was late. You may have a common law claim for interest or something, but you can't bring a claim for the wages because you've been paid the wages. The minimum wage and overtime statute is worded totally differently. Under that statute, when you're not paid minimum wage, you have a claim for unpaid minimum wage, minus anything they've paid you, plus penalty wages. So even if they've paid you everything, you still have a claim for penalty wages. And the way... But, I mean, the Oregon Supreme Court could say, if we're reading the tea leaves, could say that bringing a claim for minimum wages is separate from that statute, and you can't do both. They could say that, right, if the issue were certified? They could. They haven't in the past, right, yeah. They haven't yet. But if I thought that's what they were going to say, then that makes that difficult. Tell me just factually here, the recovery out of the pay period times. Tell me exactly what you recovered from the jury, and it was at four, four? So under the FLSA, they only recovered for three of those paydays, because it's a two-year statute of limitation, because it was found not to be willful under the FLSA willfulness. Under Oregon law, it would be a three-year statute of limitation, so it would be four paydays that the jury found were late. Okay, so how much money is that? About a little over $100,000 for the FLSA part. But that's with... That's not the actual amount. Isn't that adding some penalty? That's all liquidated damages under the FLSA. The plaintiffs agree that they were paid all the wages that they should have been paid on payday, they were paid those wages one day later. So they don't have an unpaid wage claim. In this case, they didn't assert one. They only said, you paid me late. And under the FLSA, if you pay the minimum wage late, you've got to pay, you know, double damages basically. Okay, so the $100,000 that you're coming up with includes a penalty. It includes liquidated damages under the FLSA, right. And Oregon courts have uniformly said the liquidated damages under the FLSA and the Oregon penalty serve different purposes, so you can recover them both. I want to explore the... You requested that we certify a question for this court. But the Oregon Supreme Court's Marion case, the dicta at least, seems to foreclose your interpretation. And you also have some, you know, Hunter versus Hyatt Lake Resort and so on, all of which seems to suggest there's really nothing to certify. We kind of know what they're going to do. We don't lightly certify questions to state supreme courts. What's your most compelling argument for why we should do so in this case? Because each time it's come up, the judges have said, that's not this case. And so sometimes they make arguments by analogy or by metaphor, sometimes to each other when they're kind of talking to the dissent and vice versa. But both of those cases that you mentioned in North Marion versus Axtar, it says none of those statutes is involved in this case. The interplay, if any, between them has not been examined or decided by this court. And it wasn't briefed by the parties either. Well, it seems like it'll take about a year. We had one case yesterday that took the Oregon Supreme Court a year to answer. And I know that the... Which is faster than California. Way faster. Many things are. And then in the Herger case, it says it's possible that a payment that's late under this statute can also be late for purposes of other statutes. Here, for example, the parties don't tell us whether the wages were or were not paid by the next regular payday. That seems to support the fact that if it weren't paid by the regular payday, it would be a violation of the minimum wage statute. So I agree there's dicta that has kind of gone both ways. If this circuit, you know, were to reach either in a published or in a memorandum opinion, here's what we think the law is, that wouldn't answer the question for Oregon state courts, for example. They don't follow federal law interpretation of Oregon statutes. So the best way to finally get an answer to this question that's been out there for decades, that each time it's come up hasn't quite had the correct facts to present it, this time we do have the correct facts to present it. And I think that it would behoove everyone to finally get an answer to this, as to when these penalty wage begin to accrue. Did you have a question, Your Honor? No. Okay. I'll move on to defendant's assignments of error. The denial of summary judgment on defendant's FLSA claims, I don't think that the court reaches that. I don't think that they preserve that. It's a question of fact when their payday is, and it's a question of fact whether they paid on that payday. Those aren't legal questions. Those are questions of fact, and the trial court correctly said there is conflicting testimony here as to whether they paid on the payday. What is your, when your employee handbook says we pay on the 10th and the 25th, and there's no question that it changed after that, but there is a question as to what it changed to after that. Sometimes they paid on the 5th. Sometimes they paid on the 6th. If the 5th fell on a Sunday or a Saturday or a holiday, sometimes they paid before and sometimes they paid after. So what the actual payday was, is something that had to be submitted to the jury. And they did submit it to the jury, and the jury found that the payday was, if it fell on a weekend, you could pay on Monday, but if a holiday interfered with the calculation of payroll, you still had to pay minimum wage on payday. And I'll note that both the old and the new employee handbooks say that if payday falls on a holiday, you'll usually, you know, then something will result, either be paid before or after. Neither handbook made any provision to, we understaffed our payroll department, so it took us longer to calculate than it would have otherwise, so we're going to pay you late. That's not establishing a regular payday when they say from time to time, oh, by the way, I'm going to be paying you late. On the tolling issue, I want to just point out there that this is, the FLSA is a federal statute of limitations. Under the old, when the FLSA was first passed, federal courts did borrow state statutes of limitations, but when the Portal to Portal Act passed, you know, Sections 55 and 56 of the FLSA now have their own statute of limitations. Oregon rules on tolling don't apply to federal statutes of limitations. So I want to be sure I understand this, your equitable tolling and equitable estoppel arguments rely on federal law, state law, or both? Federal law. I think federal law applies to both the statute of limitations and the tolling of federal statutes of limitations. And Oregon law has no role in this? I don't think so. I mean, we made our alternative arguments as to why we don't think the statute applies and why they didn't raise it or preserve it at the correct point and why if it does apply, then we think we meet the requirements of the statute anyway, but I don't think the court even needs to reach it because it's a federal statute of limitations. And then on the amount of attorney fees, I have never found a case where a trial court considered the degree of success of the parties, reduced the load star from the requested, but didn't reduce it as much as the defendant. Well, I think they're saying that the judge didn't consider the degree of success. I think that's what their argument is. I think that's what they're arguing, but she did. I mean, she said this was a very good result. They obtained a change in the defendant's paper. I think their argument goes further, and they say, well, the judge didn't say that in the section that one would normally consider the degree of success. Sure. I mean, they briefed it, and yeah, and the judge said that she thought it was a very good result. I agree. Is there some case that says that the judge has to do it that way, the way they've indicated? No. No. And in fact, there's cases that say that the judges don't have to specifically mention every factor as long as they mention the factors that were key and factored into their final result. You know, the whole thing is an abuse of discretion standard, and these are non-exclusive factors that weigh into that. And I think we noted, I'm not really sure what the standard of review would be if the trial court said that I think this is a very good result, and they're challenging whether it was indeed a very good result. I don't know if that's a factual finding. I don't know if this court de novo decides whether it thinks it's a very good result. But in any event, whatever the standard, I think that the trial judge went through, listed the factors that she thought would be, and it's a reasonable fee at the end of the day. And, you know, different courts require different degrees of specificity. They didn't challenge the load start. They just challenged, you know, how the degree of success, correct? Yeah, correct. Got it. Unless the court has any other questions, I'll reserve the remainder of my time. Thank you.   Good morning. Good morning, Your Honor. My name is Heather Sinclair on behalf of Defendants Maria Smith and Gladstone. May it please the Court. At the heart of this dispute is whether Defendant's conditional payday policy complied with its legal requirements to pay employees on payday. The undisputed evidence before the trial court was that it did, both under federal and state law. In this case, Defendant's conditional payday policy was that employees were paid on the 5th and 20th, unless a weekend or holiday impacted payroll operations, in which case employees were always paid by the 6th or 21st. I want to take a moment to address first plaintiff's arguments on the Oregon wage claims, and then we'll turn to Defendant's cross-appeal. Plaintiff's arguments rely on willful blindness to half of the statutes that apply to this case. They say because Chapter 653 lacks some sort of express timing requirement, that the court should ignore all of the statutes that do provide express payment requirements, and instead do what you did in Biggs and imply some sort of requirement. This Court has already rejected that argument in Rother v. Lepenko, where you specifically said the late payment is not the same as non-payment of wages. You further said that Oregon statutes expressly provide a time of payment requirement that the FLSA does not. That is the controlling outcome here, and as Your Honors already correctly noted, there are multiple cases within the state court system that would indicate how the Oregon State Supreme Court would rule on this, and I think that's the case, unlike Plaintiff's counsel's argument. But his argument is, let's certify that question, let's get an answer, we've been waiting for a while. Why isn't he right? And he seems to suggest that the law, including the North Marion case, does not necessarily answer the question. Well, that is Plaintiff's argument, Your Honor, you're correct about that. I disagree with his position clearly. I think that the reason why this shouldn't be certified is because the statutes are very clear here. This is a plain language statutory requirement under 652.120. If you had a Supreme Court case that said that exactly, you wouldn't have to be talking about this all the time. That's correct, Your Honor. And, you know, you're saying I'm going to win, okay, and maybe you will, or, you know, maybe we can ascertain what it is, but there is some benefit for having to hear this every single time, that there's an Oregon Supreme Court case that says to Mr. Egan, no, you either go under the minimum wage, or you go under the other one, or you can do both, or you can make the argument that he's making. That's fair enough, Your Honor. I do suppose it would be beneficial to everybody to have a decision on that. In Oregon. But I think that there are decisions indicating the way the Court would find on this, and the reason why I think there are not a lot of case law on this issue is because of the clarity of the statute. Plaintiff's argument relies on conflating wage rates with wage timing, and those are two different things. And when you look at Chapter 653, which plaintiffs rely on for the wage rates that are required under Oregon law, there are no less than six statutes that set out minimum rates for different things, for minimum wages, for overtime wages, for prevailing rate wages. In contrast, Chapter 652 sets out deadlines. And again, no less than eight sections, statutes under that chapter, set out deadlines for various things, including when can you go to bully to have a bond imposed? When are final wages late? When are final wages for farm workers late? There are eight statutes that set out separate deadlines. The one at issue here is 652.120, which says that employers must pay wages by the regular payday or within 35 days of the next payday. Now, Mr. Egan quoted some case to you, and I'm frankly not recalling which particular case that was, but the language he said was next regular payday. And I think that matters because he was essentially trying to argue to you that this case implied that if people weren't paid on their regular payday, then there was a problem. But the language he used for that was their next regular payday, which is what the statute says, 35 days or the next regular payday. That's when wages become late under Oregon law. Counsel, let me ask you two questions. First of all, Mr. Egan has indicated that if, hypothetically, we were to construe Oregon case law, other than from the Supreme Court, to interpret Oregon law, I understood him to say that Oregon courts are not bound, if we had a published opinion, construing Oregon law to that effect, that they are not bound by such a decision. Is that correct? I'm not sure if that's the argument he was making, Your Honor. I don't always quite follow what he's saying. Perhaps not. Certainly, that's not true in California. If we take what the California Courts of Appeal have said, interpret what we think the California Supreme Court would have done, that's binding unless the California Supreme Court later changed its mind. I understood him to say, perhaps I misunderstood, that that's not true in Oregon. Do you know? I think that is true in Oregon, Your Honor. I think if we can look at what the indications are in the court, I mean, we argued this in our briefing, that you can look at dicta out of the State Supreme Court, as you correctly identified in North Marion, and say that that is an indicator of what the Oregon State Supreme Court is likely to rule. And I think that's precisely what controls the outcome here. I think it is. But I think, well, I guess, I don't know if I'm agreeing with Judge Smith on this. My understanding is, if we interpret a state statute, and if we publish, it would be binding on the federal, our circuit, for any future times that come up. But that the state court would still be free to make a decision and say what their law is. Oh, I agree with that, Your Honor. I think I misunderstood. I think there's a distinction between the questions you both just asked. But I do think that the dicta present in North Marion is an indicator of what the Oregon State Supreme Court would say, and you're free to follow that. You're also free to pass your decision on what you think the Oregon statute says, and the state court is not bound by that. And maybe we're all saying the same thing. I don't know. There's no question that if we, like, for example, California, if we were to issue a published opinion that said this is what the statute means, and then Oregon's Supreme Court said different, I mean, the California Supreme Court said differently, that would control. No question. Maybe that's all Mr. Egan's saying about here. I'm not sure. Okay, well, let's get to a second question, and that is, if we were to certify this question to the Oregon Supreme Court, how should that question be framed in your mind? Well, Your Honor, I think that's a great question. I do think the way plaintiffs frame it in their appellate brief is not the same as the way they framed it in their trial court briefing, and I don't think it's quite accurate. I do believe at the trial court level, they looked at the way it was framed and said that they don't, the judge did not believe that was an accurate framing of the issue that's being presented here. This is really, can you imply the penalty wages that apply to the 653.055 statute to the 655.120 statute by saying that when people are paid a day past payday, that they weren't paid the full amount due on that date, therefore, you're entitled to statutory penalties. I don't think that there's support, again, in the statutes or the cases for that proposition. You're kind of taking a long way to say how the question should be formed. I'm not entirely sure how the question should be presented, Your Honor. I don't think it's consistent with the law in this state. Well, to me, it seems like that what the question is, if you pay late, can you also be sued for not the minimum wage, or is that statute, is the minimum wage really meant for people that aren't getting paid the minimum wage and not considering whether, because obviously, if you don't, if you get paid late, you didn't get paid, but that doesn't mean that necessarily your, the hourly rate that they're paying you is less than the minimum wage. That's correct, Your Honor. I think there are numerous ways. So it's a question as can you bring things, you know, can they bleed over and can you have both causes of action, or are they, is you go one way here and one way on the other one? I think that's correct, Your Honor. In some cases in Oregon law, they've talked about what you're describing is essentially a derivative violation, meaning that you violate one statute with its own remedy. Can that derivatively then violate a second statute with separate remedy? The answer in the courts that have been presented with that question has been no, but as Mr. Egan has pointed out, most of those cases have slightly different fact patterns or slightly different statutory regimes that they're pointing to. Well, let me ask you, you're challenging the summary, you're challenging the summary judgment after there was a full trial. Yes, Your Honor. Okay. So generally, we don't review denials of summary judgment after there was a full trial unless the denial was based on pure questions of law. Yes, Your Honor. It seems to me that you're making all sorts of factual arguments that were dealt with during the trial, and you're not making a challenge to the law here. I disagree, Your Honor. I think that our main argument on the FLSA claim is that there was no disputed issue of fact before the trial court when we moved for summary judgment that should have been granted. And when you look at the reasons why the district court pointed out, and I do want to spend just a moment on those, there were three things that the trial court identified. First, they said, well, plaintiff, one of the named plaintiffs had testified that she only occasionally received advance notice of the condition being triggered such that payday would move from the 5th and 20th to the 6th and 21st. In fact, that named plaintiff was only employed for one of those conditional paydays. That was the record before the trial court. In addition, whether or not employees received advance notice should not have created a dispute of fact when defendants placed in the record every single advance notice that was sent to every single employee every time that condition was triggered and the payday moved. Now, that's a question about whether or not there's a fact dispute, but I also think the other issue that we're— But that's the problem, right? That's the problem. No, sorry. I just mean from the legal standard, was it disputed, right? And the trial court relied on that to say it was. But I think that that was not a material dispute. And the reason why is because the question is whether employees were paid on payday, which means the 5th and 20th or the 6th and 21st when the condition is triggered. And in this case, there was no evidence otherwise. They were always paid by those dates. The evidence then, if plaintiff contested that she might not have received a notice, that's irrelevant to when she was actually paid. And in this case, again, there was no evidence the defendant's employees were not paid by the 5th and 20th or when the condition was triggered by the 6th and 21st. So we think it was error for the court to conclude otherwise. The other two points that the trial court made in concluding that there was an issue of fact were that employees were sometimes paid early, but early payment is not a violation of the law. It's legally immaterial to the question of whether or not they were paid by the deadline of payday. And again, they always were on the facts in this case. So we don't think that creates a material issue of fact. And then the final point that the court pointed to was the use of the word. Okay, so I get what I'm hearing you say. You're arguing factual disputes, but you're saying they weren't material factual disputes. That's correct, Your Honor. We don't think they were sufficient. So if we think they were material, then you lose on that. That's correct, Your Honor. Okay. I think that focuses what you're asking. You turn to the equitable tolling arguments here. Certainly. Because it's my understanding that your client, through counsel, said that if the plaintiffs agree to global mediation and agree to postpone all depositions and a motion for conditional certification, defendants will agree to toll the FLSA claims from March 1, 2018, the date that the complaint was filed, and sort of five years later say, never mind. How is that, why should that be allowed? Well, Your Honor, I think there's two problems with that. First of all, that is plaintiff's position that that email created a tolling agreement. It is defendant's position that it did not. The parties clearly contemplated a separate, standalone, formalized agreement with signature lines. They said, we have a deal. They said, we have a deal. Plaintiffs said, we have a deal. We have a deal. Well. But then they countered every single point within that proposal. So instead of global mediation. It looks like sharp elbows to me. It looks like you changed lawyers and the other lawyers came in and said, we're not going to be bound by what someone else already said. Well, I. And it doesn't. If I were teaching an ethical class, I wouldn't, you don't have my, you don't have my heart or my mind on that issue. I understand how it could look like that retrospectively from this perspective. But I think having litigated this case for many years on the ground, we pled a statute of limitations defense. We asserted it throughout litigation. Plaintiffs never pled any tolling defense. They never asserted it once. They never informed us of the existence of a tolling agreement. But regarding the tolling agreement, you did not raise your statute of frauds argument until after your motion for reconsider. So why isn't that forfeited? Well, that may be. It may be that we can argue the statute of frauds argument. But I think it's, it's material to the counter points here. When defense counsel said, if plaintiffs agree to these things, we will agree to tolling. And then she listed four things. And plaintiffs response to that in red line did say we have a deal. But then it went on to say, instead of global mediation within 13 months, we want it within 30 days. Instead of a stay of discovery, we need extensive discovery to be able to evaluate our settlement offer for mediation. So how long did all this mediation and global, all that, how long did it go on? It didn't. There was, there was only one stay of discovery entering the case a month later for 13 days. That's in the docket. And so that would have been completely unnecessary had the parties, in fact, entered a formal tolling agreement in September, as plaintiffs said that they did. That never happened. Global mediation did not occur in this case. In fact, the only mediation that did occur was for this particular case, the federal case, not the state case, right before trial, five years after this alleged tolling agreement was entered into. And it's very clear from the emails between the parties where Mr. Egan sent a formalized standalone tolling agreement to prior counsel and said, let's enter a tolling agreement. And then a few months went by and she said, did you have a proposal you want me to look at? And he sent it back to her. She wanted a formal standalone document that they contemplated signing. And in the case that defendants discussed in our briefing, Nance Trucking v. Volvo, the court there said that when parties contemplate setting out a formalized agreement like that with a wet signature, you cannot then find that there was mutual assent where no such formalized agreement was signed and entered into by both parties. And I think that's the case here. And you can say gotcha. Hmm? Gotcha. Well, I think, Your Honor, that this was just a simple case of a misunderstanding that was used, frankly, right before trial. I mean, this email was put in our faces during pretrial filings and nobody had seen it for five years before that. Okay. Our final point that we just want to address briefly is on the attorney's fees. Our contention on that is simply that there was no evidence in the record to support the court's decision that there was a change in defendants' payday policies as a result of plaintiff's lawsuit. Plaintiffs had filed a pre-litigation demand letter on November 20, 2017, or sorry, I shouldn't say filed. They mailed to defendants a pre-litigation demand letter on November 20, 2017, which is, of course, November 2017 is when defendants had changed their handbook policy, alleging that payments were being paid late, that employees were being paid late. And so that evidence, I think, creates a conflict in the conclusion that there was a change in defendants' payday practices as a result of this litigation. After that handbook was implemented, defendants sold the dealerships and no other changes were made with respect to any of their payday policies or other employment policies. And I would like to reserve the remainder of my time, Your Honor. Okay. Thank you. Thank you. Thank you.             Thank you. Thank you, Your Honor. First, I think that there's no question that if this Court rules and the Oregon Supreme Court disagrees, then the Oregon Supreme Court interpretate, like, that's no, nobody questions that. Nor do I. We were talking about the, I was at least, talking about the trial court level. Yeah. Under Oregon law, federal cases interpreting Oregon statutes can be followed only if they are, you know, if the trial court agrees with the reasoning, basically. But it's not precedent. Right? I think that was the only thing we were talking about. I'd like to point out the difference between liquidated damages and penalty wages. In the North Marion School District versus ACSTAR, the reason why it didn't matter when the payday was is because for the prevailing wage statute, it's liquidated damages. It's twice the amount that you were underpaid. You don't need to know the due date to calculate that. It's just twice the amount you're underpaid. And so if you're eventually paid the correct amount, you haven't been underpaid anything. That would be parallel to the unpaid wages under Oregon law. But for minimum wage and overtime, you can have a violation during employment. That's the Cornier versus Toulage case. If that's not due until termination, then the penalty wage statute would be utterly redundant and we must not presume that the legislature does not, and we must presume that the legislature does not enact meaningless statutes. In other words, if you apply the same standard as regular wages, that they're not due and penalty wages accruing until the end of your employment, then you don't need a penalty wage statute for minimum wage and overtime because those are already due under regular wages. The fact that they attach the penalty wage provision to those violations that says your wages continue eight hours per day from the due date until you're paid means there has to be a due date. Now, I understand that, you know, we have a, there's a difference of opinion between my friend and I in terms of whether the, what parts of 652.120 apply to that due date. I think even if there is a, I disagree with the grace period argument, but even if there were a grace period for regular wages before Boley could assess fines, there has to be a single due date for purposes of penalty wages for minimum wages and overtime because that's the way the statute is written. So let me talk about the fee awards. Okay, the district court said the results were, quote-unquote, very good. Okay, the district court sat through the trial, all of that, but I think, but didn't really discuss exactly what very good meant. So do we need to have the district court explain it further because one of the things that district court talked about were the settlement talks that you had before and you were asking for $7 million at some point. They were under $60,000 or whatever. I don't think you would even say that was a very good result back then. Right, so . . . I mean, it's a very good, it's got to be a very good result for you or you don't get your fee here. But I don't think, but in looking at what the negotiations were, and I know that's just one factor and it doesn't do all of that, but I don't think you would even say that was very good. Well, for this case, it was. So here's how this worked out. There is a parallel proceeding in state court that's got a couple of other causes of action that are due, that are separately being litigated, that are worth a substantial amount of money. We in mediation, as the mediator suggested, were proposing to universally settle all the claims between the parties, both state and federal. That's where that higher number comes from. The mediator asked us, if I can get them up to $100,000 just for the federal plus attorney fees, would you take that? And I said, yes, but they never got there. So that's, it didn't settle, is the only thing that's in the record. What's the best argument that the district court articulated what very good means? The change in the policy. I think that's something that didn't come up in the McCown case, is that here, what the trial court did find, as a matter of fact, that there was a change in policy brought about as a result of the plaintiff's actions. And I think, again, defendant leaves out the fact that there was also an October demand letter and a November demand letter, and then the handbook changed. So there's certainly facts that support that finding of fact by the trial court. That I think is the thing that is the most often cited in circuit decisions that send cases back to the trial court to determine. They may say, you know, look, the numbers look off to us. On remand, consider whether there was something other than the numbers that you should... Are they, did they challenge the lodestar? No. Okay. No, they just said that the trial court abused its discretion in not further reducing the lodestar, is their claim. One thing I did want to point out is the defendants say that they brought up the statute of limitations several times and defendants never raised tolling. In both of their summary judgment arguments, they only moved to dismiss claims more than three years before the filing of the complaint. That's entirely consistent with the tolling agreement. The tolling agreement was that we will go backwards from the filing of the complaint. Plaintiffs never had to raise tolling because defendants never argued a position that would be contrary to that. But one thing that she did say was that there ultimately was not a mediation consistent with what apparently was sought to be agreed to. There was a judicial settlement conference scheduled. Each side presented their initial numbers to the judge. The judge said... So that did happen? Yes. Oh. I mean, so here's what happened. We all logged on at the beginning of the day. The judge said, you guys are really far apart. I don't think this is worth proceeding. Plaintiffs said, okay, fine. Let's not do it. And the defendant said, well, we think we should do it. And the judge said, well, I'm canceling it. So we made all the preparations for the judicial settlement conference and the judge says, I don't think this is going to happen. I see. Thank you. Okay. Your time's up. Thank you very much. Let me see if my colleagues... My colleagues don't have additional questions, so... All right. We'll hear from Ms. St. Clair on the rebuttal. Thank you, Your Honor. I'll just respond to a couple of quick points here. I think, you know, Mr. Egan mentioned the North Marion case, and in that case, again, the legislature provided for two separate remedies, one for timing and one for rate requirements, and said you cannot imply more than what the legislature expressly provided for in those statutes, which is what plaintiffs are asking the court to do on their Oregon claims, by implying a deadline and a penalty right that doesn't apply to rate statutes and ignoring the deadlines and the remedies that do exist under the wage timing statutes. And I want to take a moment quickly to address the fact that there are remedies, unlike Mr. Egan's contention before you today, when minimum wages are not paid by the deadline. The statutes in 652 provide several of those. You can go to Boley and you can tell Boley I wasn't paid my minimum wage or overtime by payday, and Boley can issue a bond against the employer. You can get an attorney. The attorney can send a demand letter. And under 652-200, if you haven't responded to that letter, if you haven't paid those wages within four days, then they can file suit and collect attorney's fees and penalties. And so there are remedies provided in 652 for precisely the scenario the plaintiff's counsel is asking you to imply some other separate remedy into today. That's not consistent with the legislature. That's what the State Supreme Court said in North Marion. Moving on quickly to the settlement issue, you know, plaintiffs talked about that they wanted to settle and defendants did not. I don't know that that's or they wanted to settle all of the cases, the pretrial mediation that occurred. Counsel, earlier you said that there was no mediation, but I guess you did go, you did arrive, and is that not the case? No, Your Honor. I think we placed all this evidence in the record before the trial court. Sure. We went back and grabbed the transcript, and I wasn't present for that. This is, you know, prior counsel, so I can't say precisely what occurred there. But the transcript from Judge Brown at the time was that plaintiffs were not ready to proceed and refused. And so I think that's a very different representation of what you're saying now, that both parties showed up and they were just so far apart that it didn't go anywhere, that it didn't settle. That is not the evidence that is in the record on this issue. Judge Brown specifically said it was plaintiffs that refused to settle. Defendants were prepared to go forward. That is in the record. That was on the docket in a minutes order as well. So I just don't think that's consistent with the evidence on that issue. And finally, the representation that when mediation did occur right before trial, that plaintiffs wanted to settle both cases and defendants did not, there's nothing about that on the record. And so I just, I think that's outside the scope of the appeal today. If you have any other questions on the issues presented, I'm happy to answer them. Otherwise, thank you all for your time and attention. Thank you both for your arguments. Judge Callahan, I'm sorry, but I do have a question for counsel on that last point. Yes. Is that okay? Counsel, could you address that final point? Someone's telling me the truth. I don't know who is. And so could you address that point? Of whether the settlement conference happened? Did Judge Brown say exactly what she said? That plaintiffs were not ready to settle at that? No. Judge Brown never said that. I'm not going to find that in the transcript. What she said was, I mean, I forget if she laid out her communications with the party. She said, she did note that plaintiffs did not think it was likely to go forward and defendants did still want to have this settlement conference. But that's, I forget how much of the preamble she put in there in terms of her communications beforehand. Thank you, counsel. That seems to be different than what you represented to us earlier. Well, I think that the record is more than just what she said. Thank you. Okay. This matter will stand submitted. This court is in recess until tomorrow morning at 9 a.m.
judges: CALLAHAN, SMITH, MENDOZA